IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BUSINESS SYSTEMS ENGINEERING, INC., | ) ) ) |
| Plaintiff, | ) ) ) No. 04 C 8254 |
| v. | ) ) |
| INTERNATIONAL BUSINESS MACHINES CORPORATION ("IBM"), | ) ) ) ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Business Systems Engineering, Inc. (BSE) sues defendant International Business Machines Corporation (IBM) for breach of contract and commission of related business torts. The case was filed in the Circuit Court of Cook County, Illinois and removed to this court on grounds of diversity of citizenship. BSE is a Delaware corporation with its principal place of business in Chicago, Illinois, and IBM is a New York corporation with its principal place of business in Armonk, New York. Jurisdiction is based on 28 U.S.C. § 1332. The complaint pleads four claims: breach of contract, tortious interference with contractual relationship, tortious interference with business relations, and tortious interference with a prospective economic opportunity. Pursuant to Rule 12(b)(6), Fed. R. Civ. P., IBM moves to dismiss the complaint in its entirety for failure to state a claim upon which relief can be granted. For the reasons stated below, I

dismiss all four counts of the complaint for legal insufficiency, but grant BSE leave to replead.

In considering a motion to dismiss for failure to state a claim, I must take all well pleaded allegations of the complaint as true and construe any ambiguities in the complaint in favor of the plaintiff. *Thompson v. Ill. Dep't. of Prof'l Regulation*, 300 F.3d 1170, 1173 (7th Cir. 2002). In general, under the notice pleading requirements of the Federal Rules a plaintiff is not required to allege facts but may plead conclusions. *Shah v. Inter-Continental Hotel Chicago Operating Corp.*, 314 F.3d 278,282 (7th Cir. 2000). However, a plaintiff who pleads facts that undermine the allegations of his complaint can plead himself out of court. *Bennett v. Schmidt*, 153 F.3d 516, 519 (7th Cir. 1998). A copy of any written instrument which is an exhibit to the complaint is considered to be part of the pleadings. *Thompson*, supra, 300 F.3d at 753.

For its breach of contract claim, BSE alleges as follows. BSE is both a disadvantaged business entity (DBE) and a minority business entity (MBE).[1] IBM had a written systems integration services agreement (ITSA) with the Chicago Transit Authority (CTA) for a financial systems upgrade project (the Link IT ERP

---

[1] The complaint does not allege that BSE's status as a DSE or MBE has any legal significance with respect to BSE's claims, although it is clear that CTA made it a condition of the ITSA that a certain portion of the work be done by DBE's.

2

Project). The iteration of the ITSA appended to the complaint is unsigned. On or about November 14, 2001, IBM and BSE entered into an $8,560,000 sub-contract under which BSE was to provide certain of the work and services contracted for by IBM with CTA. That sub-contract was subsequently renegotiated as evidenced by a second sub-contract that reduced BSE's participation in the CTA Project from $8,560,000 to $3,600,000. IBM breached the agreement with BSE by, among other things, failing to provide BSE with sufficient billable hours so that BSE could meet the $3.6 million target, delaying the deployment of technicians to be supplied by BSE (BSE Resources), refusing to use qualified BSE Resources, and compelling BSE to use other third party vendors who were BSE's competitors at greater cost to BSE, thus reducing BSE's profit and ability to operate.

I look first to determine whether the complaint, as supplemented by its exhibits, establishes the existence of a contract between BSE and IBM and, if so, the terms of the contract. As noted, BSE is not a party to the ITSA. (Exhibit 1 to complaint). The parties thereto are CTA and IBM. Each of the documents referred to by BSE (Exhibits 2 and 3 to the complaint) as constituting contracts between it and IBM is specifically entitled "Letter of Intent from DBE to IBM to Perform as Subcontractor, Supplier and/or Consultant." Each is expressly a *proposal* (rather than a contract) to serve in the capacities mentioned, neither is signed on

behalf of IBM, but each contains a form affidavit (unexecuted) for signature by IBM attesting to the fact that a formal contract will be entered into between IBM and the DBE firms for work as indicated by "this Schedule D and accompanying Schedules, and will enter into such agreements within five (5) business days after receipt of the contract executed by the Chicago Transit Authority." One such letter of intent states that the "Sub (or Grand) Total" is $8,560,000, the other refers to a total of $3,600,000. The complaint alleges that the $8,560,000 "contract" between IBM and BSE was attached to the original ITSA when that document was entered into in December 2001, and that the scope of the work was negotiated to the $3,600,000 figure thereafter because of operating concerns of IBM.

## Analysis

Count I. As stated, BSE alleges that Exhibit 3 to the ITSA obligated IBM to provide $3,600,000 of work to BSE on the Link IT ERP Project. As IBM points out, by its terms Exhibit 3 does nothing of the kind, and it would be extremely unlikely in a project of this size if there were not other documents that spelled out the obligations of the parties with respect to the scope of the work or the ability of IBM to diminish that scope for specified reasons. Still, BSE alleges that it did perform under an agreement with IBM and that IBM paid BSE $2.2 million for its work.

4

IBM admits that there were contracts between the parties for the performance of services by BSE, specifically, a Customer Solutions Agreement and multiple Statements of Work (SOWs), but points out that the documents attached to the complaint do not establish the existence of any such contract. IBM is correct. BSE is not even a party to the ITSA, and the Letters of Intent are too vague and incomplete to establish a legally enforceable agreement by which BSE could hold IBM accountable for the alleged breach. Indeed, the ITSA specifically provides that it confers no rights on third persons. The Letters of Intent do not describe the work that BSE is to perform, the timing of the services, or the timing of IBM's payments therefor, let alone what other terms and conditions had been agreed to by the parties.

If documents attached to a complaint and incorporated within it by reference belie the allegations, the documents control on a motion to dismiss. *Northern Indiana Gun & Outdoor Shows, Inc v. City of South Bend*, 163 F.3d 499, 454-55 (7th Cir. 1998). If BSE wishes to stay in court on its breach of contract claim it should either append to its pleading a specific, enforceable document that unconditionally obligates IBM to provide BSE with $3.6 million of work or allege any oral understandings that imposed such an obligation.

Count 1 is dismissed for failure to state a claim. In so holding I do not rely on the documents provided by IBM as Exhibits

5

1 and 2 to its reply memorandum, since to do so would require me to treat its motion as one for summary judgment.

Count II. This count is a claim for tortious interference with contract. The elements of that claim under Illinois law are (1) the existence of a valid and enforceable agreement between the plaintiff and a third party; (2) the defendant's awareness of the contract; (3) the defendant's intentional inducement of the third party to breach that contract; (4) the third party's breach; and (5) damages to the plaintiff as a result of the breach. *HPI Health Care Serv., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 676 (Ill. 1989). BSE alleges as follows. During the course of its work, BSE submitted certain "resources"[2] to IBM, one of whom was a woman named Maureen Jones. BSE gave IBM Ms. Jones's resume and IBM interviewed and rejected her but subsequently accepted Ms. Jones when she was presented by one of BSE's competitors. The facts pleaded do not support a tortious interference claim. BSE does not allege that it had a contract with Ms. Jones, and one may even infer from paragraph 11 of the complaint that it did not, since only upon IBM's approval would BSE hire a resource.

Counts III and IV. In Count III, entitled "BSE's claims for Tortious Interference with Business Relations", BSE alleges that

---

[2] "Resources" are defined in the complaint as information technologists recruited and interviewed by BSE for presentation to IBM; if IBM approved the resources, BSE would then hire them to work on the project and bill IBM for the use of the resources.

6

IBM's conduct interfered with the business relations BSE had with CTA and with its resources. BSE, however, does not allege anywhere in the complaint that it had *any* prior relations with CTA, nor does it allege what relations, if any, it had with its resources. Count IV is entitled "Tortious Interference with a Prospective Economic Advantage or Business Opportunity. In this count, BSE names three individuals whom it claims were its "resources." As to one of these individuals, it alleges that he was first accepted and then rejected by IBM, "even though his work product was excellent." As to the other two individuals, BSE alleges that after having accepted them, IBM intentionally and improperly utilized them despite their well qualified background. Essentially, Counts III and IV, despite their different rubrics, attempt to allege the same tort. Whether one calls the conduct interference with business relations or interference with a prospective economic opportunity, the elements are the same: a valid business expectancy with a third party, defendant's knowledge of the expectancy, intentional interference with the expectancy, and resulting damage. Compare *Anderson v. Vanden Dorpel*, 667 N.E.2d 1296, 1299-1300 (Ill. 1996)(intentional interference with prospective economic advantage) with *Alfieri v. CSX Corp.*, 559 N.E.2d 166, 173 (Ill. App. 1990)(intentional interference with a business relationship). Since these are not alleged, the motion to dismiss these claims is granted.

7

The complaint is hereby dismissed. BSE has until August 5, 2005 to file an amended complaint.

**ENTER ORDER:**

_Elaine E. Bucklo_
**Elaine E. Bucklo**
United States District Judge

Dated: July 20, 2005