**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| BUSINESS SYSTEMS ENGINEERING, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 04 C 8254 |
| v. | ) | |
| | ) | Judge Elaine E. Bucklo |
| INTERNATIONAL BUSINESS MACHINES | ) | |
| CORPORATION ("IBM"), | ) | Magistrate Judge Arlander Keyes |
| | ) | |
| Defendant. | ) | |

**NOTICE OF FILING**

TO:  Arthur S. Gold
     Gold & Coulson
     11 S. LaSalle Street, Suite 2402
     Chicago, IL 60603

        PLEASE TAKE NOTICE that on this 2nd day of September, 2005, we filed with the Clerk of the United States District Court for the Northern District of Illinois, Eastern Division, **IBM'S MOTION TO DISMISS AMENDED COMPLAINT, IBM'S MEMORANDUM OF LAW SUPPORTING ITS MOTION TO DISMISS AMENDED COMPLAINT,** and the **APPENDIX OF EXHIBITS** and **APPENDIX OF WESTLAW AUTHORITIES CITED** therein, copies of which are hereby served upon you.

Dated: September 2, 2005          Respectfully submitted,

                                  INTERNATIONAL BUSINESS MACHINES
                                  CORPORATION


                                  _____
                                  One of Its Attorneys


Todd C. Jacobs
Gary M. Miller
Amanda H. McMurtrie
GRIPPO & ELDEN LLC
111 South Wacker Drive
Chicago, IL 60606
phone: (312) 704-7700
fax: (312) 558-1195

75052v1

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| BUSINESS SYSTEMS ENGINEERING, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Case No.  04 C 8254 |
| v. | ) | |
| | ) | Judge Elaine E. Bucklo |
| INTERNATIONAL BUSINESS MACHINES | ) | |
| CORPORATION ("IBM"), | ) | Magistrate Judge Arlander Keyes |
| | ) | |
| Defendant. | ) | |

## IBM'S MOTION TO DISMISS AMENDED COMPLAINT

IBM hereby moves to dismiss plaintiff Business Systems Engineering, Inc.'s ("BSE") amended complaint, pursuant to Fed. R. Civ. P. 12(b)(6).  In support of its motion, IBM states as follows:

1.     IBM was retained by the Chicago Transit Authority ("CTA") to assist the CTA with its implementation of a new computer system.  BSE was one of IBM's subcontractors on the project.  BSE asserts a breach of contract claim, alleging that IBM failed to pay BSE a "targeted $3.6 million" for its participation in the CTA project.  Am. Cmplt. ¶ 12.  BSE also alleges that IBM tortiously interfered with a contract between BSE and one of its independent contractors, Maureen Jones.  *Id.* ¶¶ 19-25.  Finally, BSE alleges that, because IBM failed to sufficiently use BSE on the project, IBM tortiously interfered with BSE's prospects of doing business with the CTA or BSE's resources in the future.  *Id.* ¶¶ 26-33.  For the reasons discussed below, BSE has failed to state a claim upon which relief may be granted.

2.     BSE's First Cause of Action is for breach of contract.  The Court dismissed the breach of contract claim in BSE's initial complaint, holding that the two letters of

intent on which BSE's claim was founded are not contracts. July 20, 2005 Order at 5. The Court

granted BSE leave to replead but held that, in order to proceed with a breach of contract count it

must either (a) "append to its pleading a specific, enforceable document that unconditionally

obligates IBM to provide BSE with $3.6 million of work" or (b) "allege any oral understandings

that imposed such an obligation." *Id.* BSE's amended complaint does not allege any oral

contract and the documents BSE attached to its amended complaint, on their face, are not

contracts between IBM and BSE.

        3.      The documents BSE relies on are: 1) an Information Technology Service

Agreement between IBM and the CTA (the "ITSA"); 2) the same two letters of intent BSE

attached to the original complaint; and 3) a potpourri of e-mails and letters between IBM and the

CTA, and at times between the CTA and BSE. This Court already held that BSE had no rights

under the ITSA and that neither of the letters of intent is a contract. *See* July 20, 2005 Order at 3

("BSE is not a party to the ITSA"), 5 ("BSE is not even a party to the ITSA"), 4 (each of the

letters of intent "is expressly a *proposal* (rather than a contract)." The only new category of

documents, the e-mails and letters, are not contracts and do not unconditionally obligate IBM to

provide BSE with $3.6 million worth of work. Moreover, none of the e-mails or letters contain

any of the essential contract terms the Court found lacking in the letters of intent. *See* July 20,

2005 Order at 5 ("The letters of Intent do not describe the work that BSE is to perform, the

timing of the services, or the timing of IBM's payments therefor, let alone what other terms and

conditions had been agreed to by the parties"); *see also Reese v. Forsythe Mergers Group, Inc.*,

288 Ill. App. 3d 972, 980, 682 N.E.2d 208, 214 (2d Dist. 1997) (to be enforceable, plaintiff must

provide enough information for the court to be able to ascertain whether the agreement has been

breached).

4.     BSE's Second Cause of Action for breach of contract as a direct

beneficiary of the ITSA fails because, as this Court has already acknowledged, the ITSA

expressly provides that it confers no rights to any third parties.  July 20, 2005 Order at 5 ("[T]he

ITSA specifically provides that it confers no rights on third persons"); *see also* Am. Cmplt. Ex. 1

§ 19.11 ("No Third-Party Beneficiaries") (providing that the ITSA "confers no rights upon any

of the parties' employees, agents, *or contractors* or upon any other Person") (emphasis added).

5.     BSE's Third Cause of Action for tortious interference with contract must

be dismissed because BSE fails to allege the required elements.  First, BSE has not alleged the

existence of an enforceable contract.  Second, BSE does not allege that IBM directed any

conduct towards Ms. Jones with the intent to induce her to breach a contract with BSE.  *See, e.g.*,

*Straka v. Francis*, 867 F. Supp. 767, 776 (N.D. Ill. 1994) (claim dismissed where intent not

pled); *see also Mitchell v. Weiger*, 87 Ill. App. 3d 302, 305, 409 N.E.2d 38, 41 (1st Dist. 1980)

(claim dismissed where no inducement of third party pled because defendant's alleged actions

were directed at plaintiff).  Third, BSE does not contend that Ms. Jones breached any agreement

with it.

6.     BSE's Fourth and Fifth Causes of Action for tortious interference with

prospective economic advantage must be dismissed as well.  Most notably, BSE does not allege

a valid business expectancy.  BSE alleges nothing more than a hope that it would have future

engagements with the CTA and that its resources would provide future work for it.  As a matter

of Illinois law, a "mere hope" of future work does not constitute a valid expectancy.  *Anderson v.*

*Vanden Dorpel*, 172 Ill. 2d 399, 407-08, 667 N.E.2d 1296, 1299 (1996) (mere hope of

employment is not a valid business expectancy as a matter of law).  In addition, BSE fails to

allege that IBM intentionally directed any conduct towards a third party with the intent to

-3-

75089v1

interfere. *George Fuller Co., A Div. of Northrop Corp. v. Chicago Coll. of Osteopathic Med.*, 719 F.2d 1326, 1331-32 (7th Cir. 1983) (dismissing tortious interference with prospective economic advantage claim where defendant's actions were directed toward the plaintiff, not a third party). Finally, because BSE alleges that IBM and BSE were competitors (Am. Cmplt. ¶ 32), BSE was required to allege that IBM acted with malice. *See Indeck N. Amer. Power Fund, L.P. v. Norweb,* 316 Ill. App. 3d. 416, 431, 735 N.E. 2d 649, 661 (1st Dist. 2000). It did not do so.

    7.  IBM submits herewith a Memorandum of Law Supporting Its Motion Dismiss Amended Complaint, which is incorporated herein by this reference.

    WHEREFORE, IBM respectfully requests that the Court enter an order dismissing BSE's complaint with prejudice pursuant to Fed. R. Civ. P. 12(b)(6).

Dated:  September 2, 2005    Respectfully submitted,

        INTERNATIONAL BUSINESS MACHINES
        CORPORATION

        One of Its Attorneys

Todd C. Jacobs
Gary M. Miller
Amanda H. McMurtrie
GRIPPO & ELDEN LLC
227 West Monroe Street, Suite 3600
Chicago, IL  60606
phone: (312) 704-7700
fax: (312) 558-1195

75089v1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| BUSINESS SYSTEMS ENGINEERING, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Case No.  04 C 8254 |
| v. | ) | |
| | ) | Judge Elaine E. Bucklo |
| INTERNATIONAL BUSINESS MACHINES | ) | |
| CORPORATION ("IBM"), | ) | Magistrate Judge Arlander Keyes |
| | ) | |
| Defendant. | ) | |

**IBM'S MEMORANDUM OF LAW**
**SUPPORTING ITS MOTION TO DISMISS**
**AMENDED COMPLAINT**

Todd C. Jacobs
Gary M. Miller
Amanda H. McMurtrie
GRIPPO & ELDEN LLC
227 West Monroe Street, Suite 3600
Chicago, Illinois 60606
Phone: (312) 704-7700
Fax: (312) 558-1195

*Counsel for Defendant International*
*Business Machines Corporation*

**TABLE OF CONTENTS**

TABLE OF CONTENTS ........................................................................................................... i

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION ...................................................................................................................1

ALLEGATIONS OF THE AMENDED COMPLAINT ..................................................................2

ARGUMENT ..........................................................................................................................3

I.      BSE's Claim For Breach of Contract (Count I) Must Be Dismissed Because BSE
Has Not Attached A Document That "Unconditionally Obligates IBM To Provide
BSE With $3.6 Million of Work." .............................................................................3

           A.      BSE has no rights under the ITSA. ...........................................................4

           B.      The letters of intent are not contracts...........................................................4

           C.      The e-mails and letters attached to the amended complaint are not
contracts and do not support BSE's claim. ..............................................5

II.     BSE's Claim For Breach of Contract As A Third-Party Beneficiary To The ITSA
(Count II) Must Be Dismissed. ..............................................................................10

III.    BSE's Claim For Tortious Interference With Contract (Count III) Must Be
Dismissed Because BSE Has Not Alleged The Required Elements..................................10

IV.    BSE's Claim For Tortious Interference With Prospective Economic Advantage
(Counts IV-V) Must Be Dismissed Because BSE Has Not Alleged A Valid
Business Expectancy Or Tortious Conduct. ........................................................12

           A.      BSE has not alleged a valid business expectancy. ..................................13

           B.      BSE has not alleged that IBM engaged in intentional conduct directed
toward a third party...............................................................................14

           C.      BSE has not alleged that IBM acted with malice. ..................................15

CONCLUSION........................................................................................................................15

# TABLE OF AUTHORITIES

## Cases

*AKW Constr. and Envt'l. Serv., Inc. v. Galioto,*
  No. 98 C 7104, 2000 WL 1809976 (N.D. Ill. Dec. 11, 2000) ............................................ 13, 14

*Anderson v. BASF Corp.,*
  No. 00 C 6804, 2001 WL 1035211 (N.D. Ill. Aug. 4, 2001) .................................................... 10

*Anderson v. Vanden Dorpel,*
  172 Ill. 2d 399, 667 N.E.2d 1296 (1996) .................................................................... 12, 13, 14

*Bescor, Inc. v. Chicago Title & Trust Co.,*
  113 Ill. App. 3d 65, 446 N.E.2d 1209 (1st Dist. 1983) ........................................................... 10

*Candalaus Chicago, Inc. v. Evans Mill Supply Co.,*
  51 Ill. App. 3d 38, 366 N.E.2d 319 (1st Dist. 1977) ............................................................... 15

*Douglas Theater Corp. v. Chicago Title & Trust Co.,*
  288 Ill. App. 3d 880, 681 N.E.2d 564 (1st Dist. 1997) ........................................................... 14

*George A. Fuller Co., A Div. of Northrop Corp. v. Chicago Coll. of Osteopathic Med.,*
  719 F.2d 1326 (7th Cir. 1983) ......................................................................................... 11, 14

*Golden v. Barenborg,*
  53 F.3d 866 (7th Cir. 1995) .................................................................................................... 10

*Gomez v Illinois State Bd. of Educ.,*
  811 F.2d 1030 (7th Cir. 1987) .................................................................................................. 2

*Hoopla Sports and Entm't., Inc. v. Nike, Inc.,*
  947 F. Supp. 347 (N.D. Ill. 1996) ..................................................................................... 13, 14

*HPI Health Care Serv., Inc. v. Mt. Vernon Hosp., Inc.,*
  131 Ill. 2d 145, 545 N.E.2d 672 (1989) ............................................................................. 10, 11

*Illinois Bell Tel. Co. v. Plote, Inc.,*
  334 Ill. App. 3d 796, 778 N.E.2d 1203 (1st Dist. 2002) ......................................................... 11

*In re Marriage of Simmons,*
  355 Ill. App. 3d 942, 825 N.E.2d 303 (1st Dist. 2005) ........................................................... 10

*Indeck N. Amer. Power Fund, L.P. v. Norweb,*
  316 Ill. App. 3d 416, 735 N.E.2d 649 (1st Dist. 2000) ........................................................... 15

*LaSalle Nat'l Bank v. Vega,*
  167 Ill. App. 3d. 154, 520 N.E.2d 1129 (2d Dist. 1988) ........................................................... 5

*Mitchell v. Weiger,*
  87 Ill. App. 3d 302, 409 N.E.2d 38 (1st Dist. 1980) ............................................................... 11

*Nikolic v. Seidenberg,*
  242 Ill. App. 3d 96, 610 N.E.2d 177 (2d Dist. 1993) ............................................................. 10

*O'Neil & Santa Claus, Ltd. v. Xtra Value Imports, Inc.*,
   51 Ill. App. 3d 11, 365 N.E.2d 316 (3d Dist. 1977) .................................................................. 11

*Straka v. Francis*,
   867 F. Supp. 767 (N.D. Ill. 1994) ............................................................................................. 11

*Talbert v. Home Sav. of Amer., F.A.*,
   265 Ill. App. 3d 376, 638 N.E.2d 354 (1st Dist. 1994) ............................................................... 5

*Werblood v. Columbia Coll.*,
   180 Ill. App. 3d 967, 536 N.E.2d 750 (1st Dist. 1989) ............................................................. 13

*Williams v. Weaver*,
   145 Ill. App. 3d 562, 495 N.E.2d 1147 (1st Dist. 1986) ...................................................... 13, 14

# INTRODUCTION

This case concerns IBM's implementation of a computer system at the Chicago Transit Authority ("CTA"). Plaintiff Business Systems Engineering, Inc. ("BSE") worked on the CTA project as an IBM subcontractor. In its initial complaint, BSE alleged that IBM breached a "contract" -- consisting of two letters of intent -- in which IBM allegedly agreed to provide BSE with $3.6 million worth of work on the CTA project. BSE also asserted claims for tortious interference.

On July 20, 2005, the Court dismissed BSE's complaint. *See* Ex. A, July 20, 2005 Order; Ex. B., Briefing on MTD. The Court held that the letters of intent underlying BSE's contract claim are not contracts and that BSE had failed to allege the elements necessary to state a claim for tortious interference. The Court granted BSE leave to amend, but did so with instructions as to what BSE must allege in order to proceed with a breach of contract claim:

> If BSE wishes to stay in court on its breach of contract claim it should either append to its pleading a *specific, enforceable document that unconditionally obligates IBM to provide BSE with $3.6 million of work* or allege any oral understandings that imposed such an obligation.

Ex. A, July 20, 2005 Order at 5 (emphasis added).

BSE filed an amended complaint on July 29, 2005. In support of its breach of contract claim (Count I), BSE now relies on three documents: (1) the Information Technology Service Agreement between IBM and the CTA (the "ITSA"); (2) the same two letters of intent attached to the initial complaint; and (3) a hodgepodge of correspondence between IBM, the CTA, and at times BSE. None of these documents is an enforceable contract between IBM and BSE. As this Court previously noted (*id.* at 3, 5), BSE is not a party to the ITSA and cannot assert rights as a third-party beneficiary. The Court also previously held that the letters of intent are not contracts. *Id.* at 3-4, 5. Finally, none of the correspondence attached to the amended complaint is a contract. These e-mails and letters do not "unconditionally obligate[ ] IBM to provide BSE with $3.6 million of work" or contain the terms essential to an enforceable contract

-1-

that the Court found missing from the letters of intent.  *Id.* at 5.  Indeed, the correspondence BSE relies on supports IBM's position.  These exhibits reference the parties' actual contracts (*i.e.*, the multiple statements of work IBM and BSE entered into in connection with the CTA project; not attached to BSE's amended complaint or relied on by BSE), which do not in any way require IBM to provide BSE with $3.6 million worth of work.  *See* § I, below.

> BSE has asserted a new breach of contract claim (Count II), seeking to enforce the ITSA as a third-party beneficiary.  But the ITSA unambiguously disclaims third-party beneficiaries, as the Court noted in its prior ruling.  *Id.* at 5 ("Indeed, the ITSA specifically provides that it confers no rights on third persons").  *See* § II, below.

> BSE has also not corrected the defects in its tortious interference with contract claim (Count III).  BSE has failed to allege (a) the existence of an enforceable contract, (b) that IBM intentionally induced anyone to breach a contract with BSE or (c) that a third party breached a contract with BSE.  *See* § III, below.

> Finally, BSE's claims for tortious interference with prospective economic advantage (Counts IV and V) remain legally deficient.  BSE has not alleged a valid business expectancy or that IBM intentionally and maliciously induced a third party to terminate a relationship with BSE.  *See* § IV, below.

## ALLEGATIONS OF THE AMENDED COMPLAINT[1]

> In December 2001, IBM and the CTA entered into a contract for the implementation of a new computer system, the Link IT ERP Project.  Am. Cmplt. ¶ 8 and Ex. 1. BSE was approved as a subcontractor on the project.  *Id.*, Ex. 1 at Ex. I.  BSE's role was to recruit consultants, or "resources," and present these resources to IBM for use on the project.  *Id.* ¶ 11.  "[U]pon IBM's approval," BSE would retain resources to work on the project.  *Id.*

---

[1] BSE's allegations are accepted as true for purposes of this motion only.  *See Gomez v Illinois State Bd. of Educ.*, 811 F.2d 1030, 1039 (7th Cir. 1987).

BSE alleges that, on or about November 14, 2000, IBM and BSE "entered into attached Exhibits 1 (A), (B), and (C)," under which "IBM was to guarantee BSE work totaling $8,560,000" on the project. *Id.* ¶ 9. BSE claims that the parties later modified this "agreement" by reducing the dollar amount to $3.6 million and that the modified agreement is attached to its complaint as Ex. 4. *Id.* The exhibits BSE relies on to support its claim are the same letters of intent the Court previously found are not contracts. BSE asserts, however, that when read in conjunction with certain correspondence between IBM, the CTA and BSE (attached as Exs. 2-3, 5-12), the letters of intent constitute a binding agreement for IBM to provide BSE with $3.6 million worth of work. *Id.* ¶¶ 9, 11. BSE alleges that IBM breached its "contract" by only providing BSE with $2.2 million of work on the project, rather than "the targeted $3.6 million in participation." *Id.* ¶ 12. BSE also claims rights as a third-party beneficiary of the ITSA. *Id.* ¶ 17.

In addition to its contract counts, BSE asserts a claim for tortious interference with contract based on IBM's alleged failure to approve a BSE resource, Maureen Jones. *Id.* ¶¶ 19-25. BSE does not allege, however, that IBM intentionally induced Ms. Jones to breach any contract or even that Ms. Jones breached a contract with BSE. *See id.*

BSE's final claims are for tortious interference with prospective economic advantage. *Id.* at ¶¶ 26-33. The gravamen of BSE's allegations is that it had hoped its involvement in the CTA project would lead to other work for the CTA in the future, and because IBM did not use BSE sufficiently on the project, BSE went out of business and therefore lost future business. *Id.*

## ARGUMENT

**I.  BSE's Claim For Breach of Contract (Count I) Must Be Dismissed Because BSE Has Not Attached A Document That "Unconditionally Obligates IBM To Provide BSE With $3.6 Million of Work."**

In its July 20 opinion, the Court stated the requirements for BSE to proceed with a claim for breach of contract. The Court held that "[i]f BSE wishes to stay in court on its breach

3

of contract claim," it must either (a) "append to its pleading a specific, enforceable document that unconditionally obligates IBM to provide BSE with $3.6 million of work" or (b) "allege any oral understandings that imposed such an obligation." Ex. A, July 20, 2005 Order ("Order") at 5. BSE responded by attaching to its amended complaint (1) the ITSA between IBM and the CTA, (2) the letters of intent the Court previously held were not contracts, and (3) a sampling of letters and e-mails, which on their face are not contracts. Because none of these documents "unconditionally obligates IBM to provide BSE with $3.6 million of work" and because BSE has not alleged any oral understanding that imposed such an obligation, BSE's claim for breach of contract must be dismissed.

### A.  BSE has no rights under the ITSA.

The only actual contract attached to the amended complaint is the ITSA. Am. Cmplt. Ex. 1. BSE is not a party to that agreement. *See* Ex. A, Order at 3 ("BSE is not a party to the ITSA"), 5 ("BSE is not even a party to the ITSA"). Moreover, the ITSA provides in no uncertain terms that it "confers no rights upon any of the parties' employees, agents, *or contractors* or upon any other Person." Am. Cmplt. Ex. 1 §19.11 ("No Third-Party Beneficiaries") (emphasis added); Ex. A, Order at 5 ("[T]he ITSA specifically provides that it confers no rights on third persons"). BSE plainly has no contract rights under the ITSA.

### B.  The letters of intent are not contracts.

BSE also relies on the same letters of intent that were attached to the initial complaint and which the Court held are not contracts. Am. Cmplt. Ex. 1, A-B, Ex. 4. Each of these letters "is expressly a *proposal* (rather than a contract)." Ex. A, Order at 4; *see also* Ex. B, IBM's Mem. of Law at pp. 5-7. In addition, "the Letters of Intent are too vague and incomplete to establish a legally enforceable agreement by which BSE could hold IBM accountable for the alleged breach." Ex. A, Order at 5; *see also* Ex. B, IBM's Mem. of Law at pp. 8-9.

4

IBM has repeatedly acknowledged that it did enter into formal contracts with the Disadvantaged Business Entities ("DBEs") who worked on the CTA project, including BSE. *See* Ex. B., IBM's Mem. of Law at p. 1, IBM's Reply at pp. 4-5. BSE has likewise acknowledged the existence of the statements of work between IBM and BSE. Ex. B, BSE's Response at pp. 2, 7, 8, 10, 11. Nevertheless, BSE has chosen to not attach the actual contracts between the parties to either its initial complaint or its amended complaint, presumably because the contracts between the parties do not in any way obligate IBM to provide BSE with $3.6 million worth of services. Whatever BSE's reasons for not attaching the real contracts,[2] the letters of intent on which BSE relies are not themselves contracts and cannot be the basis of a breach of contract claim.

### C. The e-mails and letters attached to the amended complaint are not contracts and do not support BSE's claim.

The only new documents BSE has attached to its Amended Complaint are e-mails and letters (not contracts) relating to the Link It ERP Project. BSE asserts that this potpourri of correspondence, when read in conjunction with the ITSA and letters of intent, constitutes the binding agreement between IBM and BSE. *See* Am. Cmplt. ¶ 11. Like the ITSA and the letters of intent, however, none of these documents provides BSE contract rights against IBM.

An allegation that a document is a contract is merely a legal conclusion not to be considered when deciding a motion to dismiss. *Talbert v. Home Sav. of Amer., F.A.*, 265 Ill. App. 3d 376, 380, 638 N.E.2d 354, 357 (1st Dist. 1994). Instead, the Court must review the terms of the documents attached to the complaint to determine if they are contracts. *See LaSalle Nat'l Bank v. Vega*, 167 Ill. App. 3d. 154, 159-60, 520 N.E.2d 1129, 1132 (2d Dist. 1988) (a plaintiff's claim for breach of contract is based on the document it attaches to its complaint, not its characterization of that document).

---

[2]       IBM does not rely on the parties' actual contracts for purposes of this motion. Dismissal is warranted because the documents relied on by BSE simply are not contracts.

Here, review of the "contract documents" relied on by BSE demonstrates that each provides BSE no contract rights against IBM. Indeed, none of these documents spells out the obligations of the parties and, as the Court previously noted, "it would be extremely unlikely in a project of this size" for a contract not to do so. Ex. A, Order at 4.

●**Exhibit 2:** Exhibit 2 is a letter from Robert Legatzke of IBM to Donald Mayes of the CTA. The letter reflects discussions between the CTA and IBM regarding the DBE Utilization Plan under the ITSA. *See* Am. Cmplt. Ex. 1(A). But it does not, as BSE avers, provide "[e]vidence of IBM's written agreement to have BSE participate in its $42M contract with the CTA." *Id.* ¶ 9. Indeed, this letter between *IBM and the CTA* does not even mention BSE and certainly does not constitute a contract between IBM and BSE.

●**Exhibit 3:** BSE claims that this e-mail correspondence from Jim Lautenbach of IBM to Mr. Mayes of the CTA is "[f]urther evidence of the written agreement by IBM to have BSE participate to the tune of $8.56M." *Id.* However, a review of the e-mail supports IBM's position. The commitment to use DBEs was part of IBM's contractual obligation *to the CTA*. In order for IBM to reach the 30% DBE requirement with the CTA, subcontract work needed to be allocated among various DBEs pursuant to a DBE Utilization Plan. *See* Am. Cmplt. Ex. 1, at A. IBM and the CTA developed "objectives" or "targets" for the DBEs. *See* Am. Cmplt. Ex. 3 ("The attachment below outlines the plan we have for BSE to achieve the $3.6M *objective*") (emphasis added). These "targets" or "objectives" were never promised to the DBEs (including BSE) by contract, as evidenced by the spreadsheet at page three of Exhibit 3. As that spreadsheet shows, the actual work on the project was broken down into separate "tasks," represented by task orders and individual contracts. *See id.* at 3 (referencing "anticipated contract date" for each task). BSE has not attached any of these actual contracts referenced in Ex. 3 to its amended complaint.

Further, this e-mail is addressed to the CTA, *not BSE*. The "target" discussed in Ex. 3 was solely a product of IBM's obligation to meet the CTA's requirement for DBE usage. It was not, as BSE suggests, a blanket promise to pay money to any particular DBE (regardless of the work performed, the quality of resources, etc.).

●**Exhibit 5:** This document contains a sample DBE summary report that IBM sent to the CTA to apprise the CTA of progress under the DBE Utilization Plan. Like Exhibit 3, this exhibit shows that the participation levels for each DBE were merely "targets." The spreadsheet attached to the summary report is further evidence that these "targets" were not reached by a single, blanket agreement. Instead, each DBE was required to enter into multiple statements of work (again, not attached to the amended complaint), for which IBM issued separate purchase orders. *See* Am. Cmplt. Ex. 5 at 3. Note that the purchase order committed amounts ("PO Cmmitd Amt.") identified for BSE in Ex. 5 total $1.5 million, not $3.6 million. *Id.* BSE is correct that its participation on the project was, at one point, "projected" or "targeted" to be $3.6 million under the DBE Utilization Plan. But IBM never entered into a contract with BSE in which it committed to provide BSE with $3.6 million worth of work. BSE's own allegations confirm as much, by referring to the $3.6 million as a "target." *See* Am. Cmplt. ¶ 12 (asserting that "IBM fell short of the *targeted* $3.6 million in participation") (emphasis added). As the Court previously noted, it is "extremely unlikely" that IBM would promise to pay a subcontractor $3.6 million with no contractual conditions and regardless of what services the contractor ultimately provided. Ex. A, Order at 4.

●**Exhibit 6:** The lead document in Exhibit 6 is a letter from John Ciaramella Jr. of IBM to Pamela Beavers at the CTA, in which Mr. Ciaramella requested an amendment to the scheduled participation of BSE under the DBE Utilization Plan. BSE argues that this letter somehow "confirms the BSE/IBM contract" and "further documents and details the composition of the $3.6M." Am. Cmplt. ¶ 9. But the express terms of the letter refute that argument. IBM

7

is requesting that the CTA reduce BSE's targeted participation from $3.6 million to $3.3 million due to BSE's inability to provide requested resources. The fact that this request is directed to the CTA, and not to BSE, shows that the $3.6 million participation target was in reference to the DBE Utilization Plan in the ITSA, not to a contract between IBM and BSE. Moreover, this letter shows that there was never any unconditional obligation to provide BSE with $3.6 million of work under *any* contract. As one would expect, the DBE Utilization Plan could be amended depending on the performance of the subcontractors -- in this case, reduced because BSE was not providing qualified resources.

●**Exhibit 7:** This is the first of two letters BSE has attached from Nathan Paige, CEO and Managing Principal of BSE, to Pamela Beavers of the CTA. In this first letter, Mr. Paige confirms his understanding of the modification of "C form" regarding BSE's participation on the Link IT ERP Project. The "C form" refers to "Schedule C: Letter Of Intent From DBE To Perform As Subcontractor, Supplier, And/Or Consultant," which is attached to the ITSA. As the Court has previously held, this letter of intent is not a contract. Ex. A, Order at 3, 5. In addition, Mr. Paige's communication *to the CTA* regarding BSE's participation on the project provides no basis for finding that BSE has contract rights *against IBM*.

●**Exhibits 8 and 9:** Exhibits 8 and 9 are duplicative and contain IBM's DBE compliance summary report as of September 2003. Like the previous summary report at Exhibit 5, Exhibits 8-9 show that the amounts for each DBE were merely "targets" and that the targets were at times amended due to changes on the project. This report shows that by September 2003 BSE's targeted participation had been adjusted to $3.4 million. (This, of course, refutes BSE's allegation that the exhibits show IBM's unconditional obligation to use BSE for $3.6 million worth of work.) As the summary report indicates, the DBE participation levels were not static commitments; they were "targets" used in discussions between the CTA and IBM,

8

which evolved depending on the demands of the project and other factors.  *See also* Am. Cmplt. ¶ 12.

      **•Exhibits 10 and 11:**  These exhibits are letters from the CTA's DBE compliance department notifying IBM that, as of November 2003, it was not meeting its DBE commitment to the CTA.  BSE asserts that Exhibits 10 and 11 confirm that IBM breached its obligations to BSE.  *Id.* ¶¶ 13-14.  This is wrong for at least two reasons:  (1) the letters never mention BSE, and even the exhibits BSE has attached to its amended complaint show that there were numerous subcontractors on the project; (2) the letters reference the agreement between IBM and the CTA (*i.e.*, the ITSA), in which IBM promised the CTA that it would satisfy the CTA's 30% DBE requirement, and, as we noted in Section I(A), above, BSE plainly has no rights under that agreement.  These letters confirm nothing more than the fact that, at one point on the project, IBM was behind in reaching its 30% DBE requirement with the CTA.  (IBM did eventually meet and exceed this requirement, and the CTA has not claimed otherwise.)

      **•Exhibit 12:**  Exhibit 12 is the second of two letters from BSE's Nathan Paige to Pamela Beavers of the CTA.  In the letter, Mr. Paige accuses IBM of not meeting the $3.6 million "targeted" participation for BSE.  This letter, on its face, is not a contract between IBM and BSE.  Indeed, it contains none of the essential contract terms one would expect to find in a commercial contract.  Ex. A, Order at 4, 5.  Although Mr. Paige refers to a "contractual target," BSE has provided no such contract between IBM and BSE to the Court.  The contract he is referring to is obviously the ITSA between the CTA and IBM, which contains the DBE Utilization Plan.  This is why Mr. Paige is writing to the CTA and not to IBM directly.

*   *   *   *

      In short, none of the letters and e-mails attached to BSE's amended complaint are contracts.  If IBM had entered into a contract with BSE in which it agreed to provide BSE, unconditionally, with $3.6 million worth of work on the Link IT ERP Project, BSE would have

9

attached it to its amended complaint. The farrago of documents relied on by BSE does not "describe the work that BSE is to perform, the timing of the services, or the timing of IBM's payments therefor, let alone what other terms and conditions that had been agreed to by the parties." Ex. A, Order at 5. BSE claims for breach of contract (Count I) should accordingly be dismissed as a matter of law.

## II. BSE's Claim For Breach of Contract As A Third-Party Beneficiary To The ITSA (Count II) Must Be Dismissed.

BSE's claim that it was a direct beneficiary of the ITSA must be dismissed because the ITSA expressly provides that it "confers no rights upon any of the parties' employees, agents, *or contractors* or upon any other Person." Am. Cmplt. Ex. 1 §19.11 ("No Third-Party Beneficiaries") (emphasis added); Ex. A, Order at 5 ("[T]he ITSA specifically provides that it confers no rights on third persons").[3]

## III. BSE's Claim For Tortious Interference With Contract (Count III) Must Be Dismissed Because BSE Has Not Alleged The Required Elements.

To state a claim for tortious interference with contract, a plaintiff must establish (1) the existence of an enforceable contract between the plaintiff and a third party; (2) the defendant's awareness of the contract; (3) the defendant's intentional inducement of the third party to breach that contract; (4) the third party's breach; and (5) damages to the plaintiff. *HPI Health Care Serv., Inc. v. Mt. Vernon Hosp., Inc.*, 131 Ill. 2d 145, 156, 545 N.E.2d 672, 676 (1989). A plaintiff must plead that the defendant engaged in conduct directed toward a third party with the intent to interfere with a contract between that party and the plaintiff. *See, e.g., Illinois Bell Tel. Co. v. Plote, Inc.*, 334 Ill. App. 3d 796, 806, 778 N.E.2d 1203, 1211 (1st Dist.

---

[3] A third party may only claim rights to a contract when it is clear that the contracting parties intended to confer a direct benefit on the third party. *In re Marriage of Simmons*, 355 Ill. App. 3d 942, 955, 825 N.E.2d 303, 314 (1st Dist. 2005); *Nikolic v. Seidenberg*, 242 Ill. App. 3d 96, 101, 610 N.E.2d 177, 180 (2d Dist. 1993). When a contract expressly excludes third-party beneficiaries, the intent of the parties is clear and no third party may assert rights under the agreement. *Bescor, Inc. v. Chicago Title & Trust Co.*, 113 Ill. App. 3d 65, 69-70, 446 N.E.2d 1209, 1213-14 (1st Dist. 1983); *Golden v. Barenborg*, 53 F.3d 866, 870 (7th Cir. 1995); *Anderson v. BASF Corp.*, No. 00 C 6804, 2001 WL 1035211, at *3 (N.D. Ill. Aug. 4, 2001).

2002) (claim dismissed where intent not pled); *Straka v. Francis*, 867 F. Supp. 767, 776 (N.D. Ill. 1994) (same). Thus, a plaintiff does not state a claim for tortious interference where the conduct underlying that claim constitutes an alleged failure to abide by the terms of a contract between the plaintiff and the defendant. *See, e.g.*, *Mitchell v. Weiger*, 87 Ill. App. 3d 302, 305, 409 N.E.2d 38, 41 (1st Dist. 1980); *George A. Fuller Co., A Div. of Northrop Corp. v. Chicago Coll. of Osteopathic Med.*, 719 F.2d 1326, 1331 (7th Cir. 1983). BSE has not alleged the five required elements.

In its initial complaint, BSE did not allege that it had a contract with Ms. Jones. BSE now alleges an agreement (of sorts) but has still failed to plead "the existence of an enforceable contract." *See HPI Health Care*, 131 Ill. 2d at 156, 545 N.E.2d at 576. BSE alleges that Ms. Jones was "under contract to BSE to be presented to IBM by BSE and then to become [an] employee of BSE in the event of IBM approval." Am. Cmplt. ¶¶ 20-21. BSE did not attach this alleged "contract" to the amended complaint. Nor did it allege the elements necessary to an enforceable contract -- What consideration did BSE provide to Ms. Jones? What was Ms. Jones' term of employment in the event of IBM approval? What was her salary? What were her duties and responsibilities? *See, e.g.*, *O'Neil & Santa Claus, Ltd. v. Xtra Value Imports, Inc.*, 51 Ill. App. 3d 11, 14, 365 N.E.2d 316, 318 (3d Dist. 1977) (no contract where plaintiff did not allege duration of contractual relationship, extent of services to be performed or payment terms). Indeed, the amended complaint does not even contain a conclusory allegation that BSE's "contract" with Ms. Jones was enforceable or that BSE fulfilled its obligations under that "contract."

Even if BSE had properly pled the existence of an enforceable contract with Ms. Jones, it does not allege that IBM directed any actions toward a third party with the intent to induce a breach of that contract. The alleged conduct with which BSE takes issue is IBM's rejection of Ms. Jones as a resource for the CTA project. Am. Cmplt. ¶ 24. BSE claims that

11

IBM failed to act in accordance with its obligations under an alleged contract between IBM and BSE by not approving Ms. Jones to work on the CTA project. IBM's conduct, therefore, was directed at BSE, not Ms. Jones. BSE's tortious interference claim is nothing more than a repackaged claim for breach of contract.

Finally, BSE does not contend that Ms. Jones breached her alleged contract with BSE. BSE claims Ms. Jones ultimately worked on the CTA project through a different subcontractor, but it does not allege that such work constituted a breach of any contract with BSE. *Id.* ¶ 24. On the contrary, BSE alleged facts showing that Ms. Jones *fulfilled* her obligations to BSE. The only term of the alleged contract between Ms. Jones and BSE is that she agreed to be "presented" by BSE to IBM as a proposed resource on the CTA project. *Id.* ¶ 20. As BSE alleges, Ms. Jones was, in fact, "presented" to IBM as a BSE resource. *Id.* ¶ ¶ 21-24. As such, Ms. Jones fulfilled the only obligation of the contract alleged in the amended complaint.

**IV.    BSE's Claim For Tortious Interference With Prospective Economic Advantage (Counts IV-V) Must Be Dismissed Because BSE Has Not Alleged A Valid Business Expectancy Or Tortious Conduct.[4]**

A plaintiff seeking relief for tortious interference with prospective economic advantage must allege that: (1) it had a valid business expectancy with a third party; (2) the defendant had knowledge of the expectancy; (3) the defendant intentionally interfered with the expectancy; and (4) the plaintiff suffered damages as a result of this interference. *See Anderson v. Vanden Dorpel*, 172 Ill. 2d 399, 406-07, 667 N.E.2d 1296, 1299 (1996). BSE has not pled these required elements.

---

[4] In Count IV, BSE purports to assert a claim for tortious interference with business relations, and in Count V, it purports to bring a claim for tortious interference with prospective business advantage. As was previously recognized by the Court, these are not separate causes of action; indeed, they are interchangeable. Ex. A, Order at 7. Both claims should be dismissed for the reasons set forth in Section IV, above.

### A. BSE has not alleged a valid business expectancy.

In order to allege a valid business expectancy, the plaintiff must identify a reasonable expectancy to contract with a third party. *See id.* Illinois courts demand that this expectancy be imminent--a near certainty--before an enforceable legal interest will attach. *See Anderson*, 172 Ill. 2d at 407-08, 667 N.E.2d at 1299-1300; *Werblood v. Columbia Coll.*, 180 Ill. App. 3d 967, 976, 536 N.E.2d 750, 756 (1st Dist. 1989); *see also AKW Constr. and Envt'l. Serv., Inc. v. Galioto*, No. 98 C 7104, 2000 WL 1809976, at *4-5 (N.D. Ill. Dec. 11, 2000) (no valid business expectancy where plaintiff has not established that "except for" defendant's actions plaintiff would have received contract); *Hoopla Sports and Entm't., Inc. v. Nike, Inc.*, 947 F. Supp. 347, 358 (N.D. Ill. 1996) (allegation that business was seeking sponsorship from various companies does not establish a valid business expectancy).

BSE's first claim for tortious interference is based upon its alleged expectancy of future work with its "resources." But BSE does not allege any anticipated future relationships with the resources outside of the Link IT ERP Project. *See* Ex. A, Order at 7 (dismissing claim, in part, because BSE did not "allege what relations, if any, it had with its resources"). BSE's hope that it might work with resources in the future is not a reasonable expectancy as a matter of law. In the mirror-image case where an employee claims a reasonable expectancy of future employment, courts unanimously have held that a plaintiff must show more than simply past employment and the hope of continued work. *Werblood*, 180 Ill. App. 3d at 976, 536 N.E.2d at 756 (no valid expectancy even where plaintiff had an on-going contractual relationship with employer and had been assured of contract renewal); *Williams v. Weaver*, 145 Ill. App. 3d 562, 569, 495 N.E.2d 1147, 1152 (1st Dist. 1986) (no valid expectancy even where parties had entered into previous fixed-term contract and discussed the possibility of similar agreement in the future). The same analysis applies to BSE's hope of continuing to employ certain individuals.

13

BSE's claim regarding the CTA fares no better. BSE alleges that it had worked with the CTA on one project, the Y2K conversion, and because of that project it had an expectancy for future work. Am. Cmplt. ¶¶ 4, 29. But work five years ago on a once-in-a-millennium problem like Y2K certainly does not guarantee future work. Further, BSE does not allege any discussions with the CTA regarding future business. It does not allege that the CTA planned to contract with BSE in the future. It does not allege *any* interaction with the CTA in which a future project was mentioned. And it certainly does not allege facts showing that a contract between BSE and the CTA was imminent or a near-certainty. BSE's hope for future CTA business does not come close to a valid business expectancy under Illinois law. *See Anderson*, 172 Ill. 2d at 407-08, 667 N.E.2d at 1297-98; *AKW Constr. and Envt'l. Serv., Inc.*, 2000 WL 1809976 at *4-5; *Hoopla Sports and Entm't., Inc.*, 947 F. Supp. at 358.

**B.     BSE has not alleged that IBM engaged in intentional conduct directed toward a third party.**

A claim for tortious interference with prospective business advantage must be based on a defendant's intentional conduct directed at a third party. *Williams*, 145 Ill. App. 3d at 570, 495 N.E.2d at 1152-53. An allegation that a defendant's actions, no matter how wrongful, were directed at the plaintiff can never provide the basis for a claim of tortious interference. *See Douglas Theater Corp. v. Chicago Title & Trust Co.*, 288 Ill. App. 3d 880, 888, 681 N.E.2d 564, 570 (1st Dist. 1997) (dismissing tortious interference with prospective economic advantage claim where actions directed toward plaintiff); *Williams*, 145 Ill. App. 3d at 570, 495 N.E.2d at 1152-53 (same); *George Fuller Co.*, 719 F.2d at 1331-32 (same).

Here, BSE claims it had a reasonable expectancy of contract with the CTA and BSE's resources. *See* Am. Cmplt. ¶¶ 30, 33. Thus, BSE is required to allege that IBM directed its actions at the CTA and BSE's resources with the intent to interfere with BSE's prospective business relations with them. *Williams*, 145 Ill. App. 3d at 570, 495 N.E.2d at 1152-53. BSE does not do so. Rather, the complained of conduct is that IBM wrongfully rejected resources

14

which drove BSE out of business and ended its future business relations. This conduct (if the allegations were true, and they are not) was aimed at BSE and taken pursuant to the parties' alleged agreement on the Link IT ERP Project. This alleged conduct could constitute breach of contract (if there were a contract), but it is not tortious. *See id.*

### C. BSE has not alleged that IBM acted with malice.

Not all interference with prospective economic advantage is improper. A competitor may lawfully compete for business and, in the process, upset the plaintiff's expectations of doing business with a third party. *Candalaus Chicago, Inc. v. Evans Mill Supply Co.*, 51 Ill. App. 3d 38, 48, 366 N.E.2d 319, 326-327 (1st Dist. 1977). Where it is clear from the face of the complaint that the defendant is a competitor, then the burden falls to the plaintiff to allege (and ultimately prove) that the defendant acted with malice. *Indeck N. Amer. Power Fund, L.P. v. Norweb*, 316 Ill. App. 3d 416, 431, 735 N.E.2d 649, 661 (1st Dist. 2000). "Malice" as used here requires the plaintiff to plead that the defendant's conduct was wrongful. *Candalaus,* 51 Ill. App. 3d at 47, 366 N.E.2d at 326.

BSE alleges that IBM and BSE were in competition for future CTA business. Am. Cmplt. ¶ 32. BSE was, therefore, required to allege that IBM acted with malice. It did not do so. For this additional reason, BSE's tort claims should be dismissed.

### CONCLUSION

For each of the foregoing reasons, BSE's complaint should be dismissed in its entirety. Given that the Court has already afforded BSE an opportunity to correct its pleading deficiencies, the dismissal should now be with prejudice.

Dated: September 2, 2005

Respectfully submitted,

INTERNATIONAL BUSINESS MACHINES CORPORATION

By: _____
One of Its Attorneys

-15-

## CERTIFICATE OF SERVICE

I, Gary M. Miller, certify that on September 2, 2005, I caused true and correct copies of the foregoing **NOTICE OF FILING, IBM'S MOTION TO DISMISS AMENDED COMPLAINT, IBM'S MEMORANDUM OF LAW SUPPORTING ITS MOTION TO DISMISS AMENDED COMPLAINT,** and the **APPENDIX OF EXHIBITS** and **APPENDIX OF WESTLAW AUTHORITIES CITED** therein, to be served via Messenger Delivery upon the following:

> Arthur S. Gold
> Gold & Coulson
> 11 S. LaSalle Street
> Suite 2402
> Chicago, IL  60603

Gary M. Miller

75052v1